AARON M. CLEFTON, Esq.  (SBN 318680)
REIN & CLEFTON, Attorneys at Law
1423 Broadway, # 1133
Oakland, CA 94612
Telephone:  510/832-5001
Fax:   510/832-4787
info@reincleftonlaw.com

IRAKLI KARBELASHVILI, Esq. (SBN 302971)
ALLACCESS LAW GROUP
1400 Coleman Ave Ste F28
Santa Clara, CA 95050
Telephone: (408) 295-0137
Fax: (408) 295-0142
irakli@allaccesslawgroup.com

Attorneys for Plaintiff JAMES ALGER

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES ALGER, <br><br> Plaintiff, <br><br> vs. <br><br> ASHFORD CM PARTNERS LP; <br> ASHFORD TRS CM LLC; <br><br> Defendants | **Case No.**  24-cv-6482 <br><br> *Civil Rights* <br><br> **COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES** <br><br> **DEMAND FOR JURY TRIAL** |

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

1

JAMES ALGER ("Plaintiff") complains of ASHFORD CM PARTNERS LP; ASHFORD TRS CM LLC ("Defendants") as follows:

### INTRODUCTION

1.     This is a civil rights action involving the lack of disabled access to the building, structure, facility, complex, property, land, development, and/or business complex known as "Hilton Orange County Costa Mesa" at 3050 Bristol Street, Costa Mesa, CA 92626 ("Hilton OC") in violation of Title III of the Americans with Disabilities Act of 1990 ("ADA") and other statutes. Defendants repeatedly denied Plaintiff, a person with a disability who uses a wheelchair or scooter for mobility ("Wheelchair"), access to the swimming pool and whirlpool ("Aquatic Facilities") because of multiple barriers including inaccessible gates, and chair lifts that were in a state of disrepair, inaccessible, inoperable, or non-existent. Plaintiff was also exposed to considerable danger when utilizing the specified loading area, due to its non-compliance with accessibility standards. To make matters worse the designated accessible parking space is near an entrance that leads to an inaccessible path, preventing disabled persons from accessing the hotel. Furthermore, despite Defendants' apparent provision of an accessible check-in counter, the counter is not readily visible upon entry, there is no signage, and apparently, no policy to direct disabled guests to it as on every occasion Plaintiff had to go to the front desk for check-in, purchase of goods, duplicate keys, etc., he was directed to the inaccessible counter which created extreme difficulty and embarrassment for Plaintiff as the counter was too high. The designated accessible counter remains unusable for Plaintiff as it also lacks a computer or credit card reader for check-in or purchases forcing those with disabilities to use the inaccessible counter. Plaintiff faced these accessibility barriers personally and repeatedly for several months during each of his paid visits to the Hilton OC.

2.     On multiple separate occasions, and months apart, Plaintiff used the goods

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

2

and services of the Hilton OC, for which they were paid but he did not receive access to the goods and services he paid for. Plaintiff is **not** a "high-frequency litigant" and attempted to settle this matter before filing this action but unfortunately, despite multiple requests, and even promises by the hotel to do so, Hilton OC has failed to remediate the deficiencies.

3.     Defendants' failure to provide accessible features and amenities that are provided to non-disabled guests contravenes the "full and equal" access mandate of Title III of the Americans with Disabilities Act of 1990, as well as corresponding California civil rights statutes. Thus, Plaintiff has faced repeated barriers to accessing the full and equal services of the Hilton OC, leading to experiences of embarrassment and humiliation. Plaintiff seeks damages as stipulated for access provision under the ADA, along with injunctive relief to ensure full and equal access, and statutory damages under California statutes. Further, Plaintiff is seeking a declaratory judgment and the reimbursement of reasonable statutory attorney's fees, litigation expenses, and costs, as provided for by federal and state statutes.

## JURISDICTION AND VENUE

4.     This Court has subject-matter jurisdiction of this action under 28 U.S.C. § 1331 for violations of the ADA, 42 U.S.C. §§ 12101 *et seq*. Under supplemental jurisdiction, attendant, and related causes of action, arising from the same facts, are also brought under California law, including, but not limited to, violations of the Unruh Civil Rights Act and the California Disabled Persons Act.

5.     Venue is proper in this court under 28 U.S.C. § 1391(b) and is founded on the fact that the real property that is the subject of this action is in this District and that Plaintiff's causes of action arose in this District.

## PARTIES

6.     Plaintiff JAMES ALGER ("Plaintiff") is and at all times relevant here was, a

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

3

qualified individual with a physical disability. Plaintiff suffers from Charcot-Marie-Tooth disease ("CMT"), a disease of the peripheral nerves that control muscles that can cause progressive loss of function and sensation in the hands, arms, legs, and feet. CMT is a form of inherited peripheral neuropathy. A work injury caused this disease to accelerate rapidly. As a result of his disability, Plaintiff has severe difficulty walking, as well as difficulty with fine motor skills. Plaintiff relies on a Wheelchair to ambulate outside the home and is able to drive a vehicle equipped with hand controls. In an attempt to maintain functionality and get relief from the pain associated with his disability, Plaintiff routinely seeks the use of Aquatic Facilities. Plaintiff possesses a permanent disabled parking placard issued by the State of California.

7.     Defendants ASHFORD CM PARTNERS LP; and ASHFORD TRS CM LLC, are and at all relevant times were the owners, operators, lessors, and/or lessees of the subject business, property, and buildings at all times relevant to this Complaint.

8.     Defendants did not make the necessary accommodations to ensure that their facilities, products, and services were accessible to Plaintiff and others with physical disabilities. This non-compliance with federal and state laws on accessibility has directly led to the violations, continuing issues, and harms suffered by Plaintiff, as detailed in this complaint.

9.     Plaintiff is informed and believes, and on such information alleges, that at all times mentioned here, Defendants, and each of them, were the agents, servants, employees, and representatives of each of the other Defendants, and performed all acts and omissions stated here within the scope of such agency or employment or representative capacity, and/or as part of a joint venture and common enterprise with one or more of the other Defendants, and are responsible in some manner for the acts and omissions of the other Defendants in proximately causing the damages

complained of here.  All actions alleged here were done with the knowledge, consent, approval, and ratification of each of Defendants here, including their managing agents, owners, and representatives.

## FACTUAL ALLEGATIONS

10.     Plaintiff has been subject to discrimination by Defendants, as the amenities and policies at Hilton OC do not comply with the requirements of the ADA, the Unruh Civil Rights Act, the California Health and Safety Code, and the Disabled Persons Act. Defendants have neglected and persistently declined to ensure full, equal, and independent access to the services, amenities, benefits, and accommodations that are available to individuals without disabilities at Hilton OC.

11.     The Hilton OC and its facilities, including, but not limited to, its entrances/exits, parking, interior paths of travel, transaction counters, restrooms, and pool are each a "public accommodation" and part of a "business establishment," subject to the requirements of § 301(7) of the ADA (42 U.S.C. § 12181(7) and of California Civil Code §§ 51 *et seq.*

12.     On information and belief, the Hilton OC and its facilities have, since January 26, 1993, undergone construction, alterations, structural repairs, and/or additions, subjecting the facility to disabled access requirements of § 303 of the ADA (42 U.S.C. § 12183). Such facilities constructed or altered since 1982 are also subject to "Title 24," the California State Architect's Regulations. Irrespective of Hilton OC's construction and alteration history, removal of the access barriers at the subject premises are subject to the "readily achievable" barrier removal requirements of Title III of the ADA.

13.     Plaintiff holds premium memberships in multiple hotel loyalty programs, including Hilton Honors where he currently enjoys Diamond status.[1] Plaintiff often

---

[1] Diamond is the highest level of the Hilton Honors rewards system.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

5

lodges at hotels for a multitude of reasons, with an average of well over 75 stays annually for nearly a decade.[2] Regular water exercises are vital for Plaintiff's muscle maintenance, and hotels conveniently provide the necessary facilities for such activities. Hence, the availability of Aquatic Facilities is essential for his health and relaxation and a significant criterion in his hotel selection process due to their importance in his disability management. In choosing a hotel, Plaintiff prioritizes the presence of Aquatic Facilities along with other considerations such as the cost of accommodation, proximity to electric vehicle charging stations, and the hotel's location relative to his itinerary, among other less tangible criteria such as simply wanting to stay in a new place.

14.     Plaintiff is an avid member of the Tesla community, owning three Model S vehicles, having a fourth Tesla in the household, and being a member of multiple Tesla clubs. In addition, many of Plaintiff's close friends are Tesla owners as well. As a result, he has made friendships with individuals who specialize in the modification and repair of Tesla vehicles.

15.     On the morning of January 2, 2024 Plaintiff needed to be in Costa Mesa California for a vehicle repair appointment with a paint and body shop he has an ongoing relationship with that specializes in the repair of Tesla vehicles. The shop had requested that the vehicle be there the moment they opened, as they were doing Plaintiff a favor to get the vehicle fixed with a rapid turnaround. As is his habit, to circumvent the excess of 2 hours spent in traffic en route to Costa Mesa on the morning of the 2nd, utilize the opportunity for exercise and relaxation, as well as take advantage of the requirement to be in Orange County and go to Downtown Disney on the 1st, Plaintiff searched for hotels within an area stretching

---

[2] For clarity, when averaging total stays over the last eight years, which is as far back as Plaintiff has data, it equals approximately 178 stays per year with one hotel chain alone. His current average in recent years is above 75 stays annually.

from Long Beach to Anaheim. Based on all of the criteria, the Hilton OC seemed

to be the perfect choice.

16.     On January 1, 2024 Plaintiff checked into the Hilton OC. **Exhibit "1"**.

Immediately upon arrival, Plaintiff's safety and well-being were jeopardized due to

the lack of a compliant access aisle at the passenger loading zone:



17.     The absence of a designated disabled loading zone poses significant risks. A

clearly marked and reserved access aisle is crucial for Wheelchair users, like

Plaintiff, to ensure safe transfers between their Wheelchair and the hotel entrance

and to prevent obstruction by parked vehicles. A properly marked access aisle

guides disabled persons such as Plaintiff along a specific accessible path. The

failure to have that creates a danger as someone in a Wheelchair, often below the

eye line of some vehicles, is left wandering around traffic looking for a curb cut, or

accessible entrance. The Hilton OC's failure to provide a protected loading zone

area creates substantial hazards for Wheelchair users. Moreover, without a

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND
DAMAGES

designated protected path, Plaintiff was forced to cross multiple traffic lanes to enter the hotel, mirroring past incidents where he was nearly struck by vehicles.

18. One of the convenient features of Hilton Honors is the ability to not have to check in at the front desk when arriving at some locations. Instead, they provide an "electronic key" for members to use to access the elevator, amenities, and rooms via a phone app. However, during the course of his stay at Hilton OC, the electronic key failed to properly work in the elevator denying Plaintiff access to the second floor, which is where the pool and whirlpool are located. Plaintiff went to the front desk for the purpose of obtaining a regular hotel key. Unfortunately, even though an accessible counter appeared to exist, Plaintiff was summoned to a counter by hotel staff that was too high, and therefore inaccessible to Plaintiff:[3]



[3] This has been a recurring problem at hotels who often have a lowered counter section presumably for use by disabled patrons, but no policy to ever guide anyone there. In Plaintiff's experience, if he went to that counter, he was often either completely ignored, served absolutely last, or called over to the main counter anyway. It should be noted that one of the benefits of being a Diamond member of Hilton Honors is to provide priority access at the check-in counter area.

19.     This height issue created challenges, discomfort, and embarrassment during the process of obtaining a key, as he was unable to easily reach the counter.

20.     Plaintiff's disabilities mandate the need for a working accessible lift to enter and exit Aquatic Facilities safely. Unfortunately, he often finds that hotels either lack such lifts or have them in a non-working state, causing considerable distress.

21.     Sometime during his stay, Plaintiff proceeded to the Aquatic Facilities area. The Hilton OC is somewhat unique in that its Aquatic Facilities are located on two separate levels of the pool area. When guests exit the hotel there is a very small distance before they are met with an inaccessible gate directly in front of them. This is inaccessible because it contains a latch located at the top of the gate, unreachable to individuals in Wheelchairs, including Plaintiff:



COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

22.     When opened, there is an accessible path to the whirlpool and stairs that would lead to the swimming pool. Prior to entering the gate there is a ramp to the right that would bring disabled guests down to the pool level however approximately halfway down that ramp there is another inaccessible gate, rendering the ramp useless to individuals with disabilities:



23.     This despite the hotel specifically advertising an "accessible route from the hotels accessible public entrance to the swimming pool." **Exhibit "2"**. This gate, located on a presumably accessible ramp, has a latch on the top that cannot be reached by individuals in a Wheelchair, and is mounted on the inside of the gate.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

24.    Plaintiff had a third party open the gate for him and entered the pool area where he was met by a pool lift that was inoperable and had no battery:



25.    Plaintiff then proceeded to the whirlpool area where he was met by the same type of gate that blocked the accessible ramp to the pool, as described above. He was further dejected to discover there was no lift at all for disabled persons:

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21



22   26.    Interestingly, the Hilton OC openly acknowledges that their whirlpool is
23   inaccessible, although their website says they do not have "an accessible route
24   from the hotel's accessible public entrance to the spa." *Id.* **Exhibit "2"**. To be
25   clear, what makes it inaccessible is the gate latch they installed, identical to the one
26
27

that blocks the pool (which has a lift installed), and the fact that they have apparently refused to install a lift.

27.    Plaintiff had a lift designed to assist disabled persons in getting in and out of a bathtub. He retrieved this lift from his room and used it to enter and exit the whirlpool, albeit with great difficulty and in an unsafe manner:



28.    Since the lift was not intended for this use as it is only capable of lifting 20 inches, the process was quite cumbersome. Plaintiff needed to transfer from his wheelchair to the portable lift, lower to the deck, transfer off the lift to sit on the ground, raise the lift to its highest point and place it in the whirlpool, then transfer

onto the lift again in order to lower down into the whirlpool. The entire process would be reversed to exit the whirlpool. The suction cups of the lift, which were meant to grip the floor of a tub, were ineffective on the surface of the plastered whirlpool, resulting in the entire setup being quite unstable.

29.     While all of this was occurring, Plaintiff contacted the hotel staff to see about getting the lift for the pool working, unfortunately to no avail.  At 7:07 PM, on January 1st, Plaintiff sent the following message: "Hey, would you happen to have the battery for the pool lift?" (**Exhibit "3"**) to which he received no response. Annoyed, at 10:51 AM the following morning he wrote "so I'm guessing that's a no." *Id.*

30.     These messages would not be responded to until 1:22 PM, over 18 hours after his initial request for assistance. *Id.* Even then, despite the initial message being quite clear what he received from the hotel was "Good afternoon, Mr. Alger. I apologize for the delayed response. Just to clarify, are you asking if the handicapped seat at the pool works?" *Id.* By this time, Plaintiff had left the hotel, completed his local business, and was already home writing an email to the manager of the Hilton OC to complain about the service, and lack of ADA accessibility. In fact, he was literally in the middle of writing the email to the hotel manager when the hotel sent their response. **Exhibit "4"**

31.     In the email, sent to Mr. Benito Benitez, General Manager of the Hilton OC Plaintiff laid out the issues he faced when staying at the hotel. *Id.* These included the access aisle, the front desk issue, and the inaccessibility of Aquatic Facilities. This email explained why certain issues that 'may seem trivial to some' are actually important. It educated the manager on the purpose of protected access aisles, emphasizing that these aisles exist to prevent people in wheelchairs from having to navigate around vehicles that might not see them. The email also shared Plaintiff's personal experience of being struck by a pickup truck because the driver could not

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

14

see him while he was sitting in his wheelchair, though it noted that this incident did not occur at Hilton OC. *Id.*

32.     To his credit, the General Manager responded to the email two days later. He extended an apology and offered a small degree of compensation stating "As a gesture of my concern, I would like to offer you a full refund for the night of January 1, 2024 and a 50,000 HH points to be used for future stays within our Hilton family hotels."[4] *Id.* More importantly, he promised he would resolve the issues identified stating "Rest assures [sic] that the issues will be and [sic] resolved as needed." *Id.* At this point, Plaintiff felt that the issue would probably be resolved. He sent an email in response stating in part "I am hopeful that the steps you are taking will indeed improve the service for future disabled guests. I look forward to seeing these changes in action the next time I am in the area." *Id.*

33.     Plaintiff holds annual passes to multiple theme parks and attractions, including Disneyland where he holds an "Inspire Key" annual pass. This is the highest-level annual pass with the least amount of "blackout days" allowing Plaintiff to go quite often, which he does.

34.     On January 28, 2024 Plaintiff had scheduled a trip to visit Disneyland. Having received assurances from the hotel management, Plaintiff did not hesitate to book a room at Hilton OC for the night of the 27th so that he would be in the area the morning of the 28th. Plaintiff not only had a reservation but did in fact stay at the Hilton OC on the night of the 27th. **Exhibit "5"**.

35.     Unfortunately, upon arrival, he was met with the same condition as his last visit. Once again, he was compelled to have his safety and well-being placed at risk due to the lack of a compliant access aisle at the passenger loading zone area:

---

[4] "HH points" in this exchange refers to Hilton Honors rewards points.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

1
2
3
4
5
6
7
8
9
10
11
12
13
14



15   36.    Plaintiff had requested and received an electronic key via the Hilton Honors
16   app so he bypassed the front counter and went directly to the room. But upon
17   arriving at the room, the electronic key, which had worked in the elevator, did not
18   appear to work on the door. Plaintiff then proceeded back downstairs via the
19   elevator to the front counter in an effort to get regular card keys. Once again
20   Plaintiff was called to the main counter and not the accessible counter in order to
21   check in and receive his keys. This created difficulty and embarrassment as
22   Plaintiff's disability has unfortunately progressed to the point that he now has
23   difficulty raising his arms over his head to reach the counter. He proceeded back
24   up to the room only to find that the card key did not work either. At this point, he
25   called the front desk via cell phone and maintenance was sent to the room. After a
26   period of waiting, maintenance arrived and as it turned out the rooms electronic
27

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND
DAMAGES
16

door lock had a dead battery. Plaintiff wondered to himself "If they don't have the batteries in the room doors charged, what are the odds they are charged for the pool?" Unfortunately, his ability to get in the pool or spa that evening was eliminated by the delays in getting the door to the room open as both had now closed. But he looked forward to being able to get some exercise done in the morning prior to heading over to Disneyland.

37.     Shortly after waking on the morning of the 28th, Plaintiff proceeded down to the Aquatic Facilities only to be confronted with the reality that virtually nothing had changed from his last visit. Once again, the facilities were both inaccessible due to gates that were inaccessible to Plaintiff. Upon having the gates opened by a third party, Plaintiff found that while there was a battery on the pool lift, unfortunately, it was dead:



COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

Once again there was no lift available at all on the whirlpool:



Frustrated, he went to his room, retrieved his bags, and left for the day.

38.     On the morning of February 2, 2024 while cleaning out the spam folder of his email, Plaintiff found an email message from "Hilton Guest Assistance".  It read as follows:

> Hi JAMES,
>
> Recently you contacted Hilton with your comments regarding your stay at the Hilton Orange County Costa Mesa on January 1, 2024. We understand that the hotel has been in touch with you and we wanted to make sure that your concerns were resolved to your satisfaction.
>
> Please feel free to reply to this message if further assistance is needed.

Thanks for your ongoing loyalty and understanding.

Happy travels,

Corporate Guest Relations Specialist

**Exhibit "6"**

39.     Plaintiff responded to the email that his concerns had not been fully satisfied and requested a return phone call.

40.     On February 3, 2024, Plaintiff once again needed to be in the area for vehicle repairs. As it is his habit to "multitask" while in a given area, he figured it would be a good time to get some exercise while the vehicle was being worked on, take a trip over to a few local eateries that he had been wanting to try out when he was in the area, as well as possibly go to Disneyland the following morning. At this point, he was put in the position of taking the chance that the Hilton OC had taken some corrective action, or based on his past experiences, being deterred from making a reservation at that location. He chose to take the chance, made the reservation, and subsequently stayed at the Hilton OC. **Exhibit "7"**.

41.     Much to Plaintiff's frustration and disappointment, each and every inaccessibility issue that he encountered on previous visits, he encountered once again. This included them not being bothered to simply paint a protected path or protected loading zone in the loading zone area, once again forcing Plaintiff to cross traffic lanes and the driveway in order to enter the hotel:



42.   In fact, they had not even bothered to charge the battery to the lift on the pool either through sheer indifference, or lack of a consistent policy to do so. Regardless of the reason, the battery was in the exact same condition on February 3rd that it was on January 28th:



COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

20

43.     On February 12, 2024, Plaintiff sent a follow-up email to the general manager Mr. Bonito Benitez. The subject line of the email was "Unresolved ADA accessibility issues and repeated violations." The email specifically identified the issues confronted by Plaintiff stating in part:

> "To be crystal clear, the violations I am referring to are as follows:
>
> 1) Absence of a compliant access aisle at the passenger loading zone.
>
> 2) Absence of handicapped parking at the closest proximate space to the entrance. (you literally have it as far away as humanly possible from the entrance)
>
> 3) Inexpressible [*sic*] pool, The ramp to the pool is blocked by an inaccessible gate that is unable to be opened by someone in a wheelchair.
>
> 4) Failure to have a policy of recharging pool lift batteries, or defective pool lift batteries that no longer charge
>
> 5) Failure to have a lift at all for the Jacuzzi.
>
> 6) Failure to provide signage advising arriving guests of accessible counter
>
> 7) Failure of staff to be properly trained to direct persons in wheelchairs to an accessible counter option"

**Exhibit "8"**

44.     The email continued to explain the financial realities of failing to comply with the ADA in an attempt to underscore the seriousness of the situation. In an attempt to have the email complaint sent "up the chain," on the assumption that the moment an attorney saw the complaint they would immediately recommend corrective action, Plaintiff even included language suggesting forwarding the email to their legal department saying, **"Should you have any questions at all regarding your legal requirements I strongly suggest you refer this letter to**

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

1   **your legal counsel.''** (emphasis added). *Id.* Plaintiff explained that this was an

2   attempt to avoid the potential financial outcomes and the expense of litigation

3   "Funds better use for enhancing accessibility." *Id.* The email requested contact

4   "within 10 days." No response was received. *Id.*

5   45.     On May 25, 2024, Plaintiff planned a trip to visit Disneyland and needed to

6   go to Costa Mesa once again to pick up a car part. Knowing that months had

7   passed since his interaction with the Hilton OC's management and, while not

8   understanding the logic, having had the previous experience of a location

9   correcting ADA deficiencies without follow-up notification, Plaintiff faced the

10  choice of either assuming that the Hilton OC did nothing to increase their

11  accessibility since his last contact and be deterred from staying at the Hilton OC

12  or take the chance of facing accessibility barriers once again, and proceed with a

13  reservation. Plaintiff chose the latter. **Exhibit "9"**.

14  46.     Upon arrival, Plaintiff again encountered the same barriers to access as his

15  last visit. Despite being informed on multiple occasions, nearly nothing had

16  changed. He was once again compelled to risk his safety and well-being due to the

17  lack of a compliant access aisle at the passenger loading zone. The designated

18  accessible parking space was still rendered virtually inaccessible by its location

19  literally as far away from the front door as physically possible. There was no

20  ADA signage for the front desk, nor any apparent policy to actually use it, no

21  guidance to the ADA-accessible counter, and moreover, a refusal to use it by staff.

22  The designated accessible ramp to the pool was still blocked by an inaccessible

23  gate, and there was still no lift installed at the whirlpool. There was however a

24  functioning pool lift battery despite the pool itself being inaccessible.

25  47.     At this point, Plaintiff feels it is fruitless to continue attempting to return to

26  the Hilton OC when in the area and he is currently deterred based on his four prior

27  visits, and the lack of any attempt whatsoever on behalf of the hotel to correct the

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND
DAMAGES

situations identified. This has become another increasing source of frustration for Plaintiff as he has actively attempted to avoid the cost and expense of litigation in his futile quest to have the Hilton OC comply with a law that has been on the books for over 30 years.

48.     Despite cordial emails and conversations over the course of six months, or even a legally threatening email Plaintiff has been unable to get Defendants to take the simple steps of painting a curb, moving a latch, installing a lift, and putting up a sign. Things that cost a fraction of the cost of litigation and are clearly readily achievable, yet months since his first complaint and nothing has been done, despite vague promises to do so. In Plaintiff's experience, this has occurred in the past, and in every case the issues get resolved relatively quickly after filing a federal complaint. Even then, it appears to be usually an attempted legal tactic to "moot out" the federal complaint itself and avoid accountability. This type of gamesmanship appears deliberate and calculated. It is unfair to the disabled community, discriminatory, and ultimately a waste of the courts' resources as prompt compliance with the ADA would prevent unnecessary litigation and conserve court resources.

49.     Before filing this lawsuit, Plaintiff's inspector did an informal investigation of the subject premises. He confirmed the barriers encountered by Plaintiff and identified additional accessibility barriers related to Plaintiff's disability:

- The designated accessible parking at the front of the hotel is missing $250 penalty signage
- The designated accessible parking at the front of the hotel is a standard ADA stall, rather than van accessible
- There is an ISA directional signage at front parking but without a marked path of travel crossing traffic to a secondary hotel entrance
- The secondary hotel entrance has no marked accessible loading zone

- There is no direct path to check-in from the second hotel entrance, instead Wheelchair users must use elevators
- There is no ISA signage at the check-in counter
- ADA Room 519:
    i. Inadequate clearance under the desk
    ii. The path of travel between the desk and the bed is too narrow
    iii. The coffee maker and coffee is out of reach
    iv. The door guard lock on the door is too high
    v. The faucet and body lotion in the restroom are out of reach

50.     These barriers to access are listed without prejudice to Plaintiff citing additional barriers to access after inspection by Plaintiff's access consultant, per the 9th Circuit's standing standards under *Doran v. 7-Eleven, Inc.* 524 F.3d 1034 (9th Cir. 2008), *Chapman v. Pier One Imports (USA), Inc.,* 631 F.3d 939 (9th Cir. 2011).

51.     Plaintiff alleges that it would be a futile gesture to provide notices of violations relating to his continued or attempted visits, which are certain to occur regularly following the filing of this Complaint. Therefore, Plaintiff will seek to supplement this Complaint at the time of trial as to subsequent events, according to proof.

52.     Defendants were aware or reasonably should have been aware, that certain aspects of their establishment and their policies made the Hilton OC inaccessible, constituting a violation of state and federal laws and hindering or denying access to individuals with mobility impairments. Based on available information, it is believed that Defendants possess the necessary financial means to eliminate these obstacles and make the Hilton OC accessible to people with physical disabilities. But Defendants have not taken action to remove these barriers or to ensure full and equal access to the facility.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

53.     Because of Defendants' conduct, including their omissions and their failure to ensure access for the disabled, Plaintiff has experienced a violation of his civil rights, emotional distress, and infringement of his right to full and equal enjoyment of public facilities, resulting in general, special, and statutory damages. Each instance of denied access has subjected Plaintiff to difficulties, discomfort, and humiliation. Plaintiff has thus had to seek legal counsel and is now claiming statutory attorney's fees, litigation expenses, and costs, as provided for under federal and state law.

54.     Plaintiff's goal in this suit to make the Hilton OC fully accessible to persons with similar mobility disabilities.

**FIRST CLAIM:**

**VIOLATION OF THE ADA, TITLE III**

**[42 U.S.C. §§ 12101 et seq.]**

55.     Plaintiff repleads and incorporates by reference, as if fully set forth hereafter, the allegations contained in all paragraphs of this Complaint and incorporates them here as if separately repled.

56.     Plaintiff was at all times relevant here a qualified individual with a disability as defined by the ADA, as he has impairments that substantially limit one or more major life activities.

57.     Plaintiff has reasonable grounds for believing he will be subjected to discrimination each time he may attempt to access and use the subject facilities.

58.     The subject property and facility are among the "private entities," which are considered "public accommodations" for purposes of Title III of the ADA. 42 U.S.C. § 12181(7).

59.     The acts and omissions of Defendants set forth here were in violation of Plaintiff's rights under the ADA and the regulations promulgated under it, 28 C.F.R. Part 36, *et seq.* For example, Section 242.2 of the 2010 ADA Standards for

Accessible Designs provides "242.2 Swimming Pools. At least two accessible means of entry shall be provided for swimming pools. Accessible means of entry shall be swimming pool lifts complying with 1009.2; sloped entries complying with 1009.3." Defendants have violated this regulation.

60.     Plaintiff alleges on information and belief that the Hilton OC was designed and constructed (or both) after January 26, 1993 -- independently triggering access requirements under Title III of the ADA.

61.     Here, Defendants violated the ADA by designing or constructing (or both) the Hilton OC in a manner that did not comply with federal and state disability access standards even though it was practicable to do so.

62.      The removal of each of the barriers complained of by Plaintiff were at all times here mentioned "readily achievable" under the standards §§12181 and 12182 of the ADA.

63.     As noted throughout this Complaint, the removal of each of the architectural barriers complained of here was also required under California law.

64.     Defendants have discriminated against Plaintiff in violation of Title III of the ADA by: (a) providing benefits that are unequal to that afforded to people without disabilities; (b) failing to make reasonable modifications in policies, practices, or procedures when such modifications are necessary to afford (and would not fundamentally alter the nature of) the goods, services, facilities, privileges, advantages, or accommodations of the Hilton OC to individuals with disabilities; (c) failing to remove architectural barriers in existing facilities where such removal is readily achievable; and (d) where Defendants can demonstrate the removal of architectural barriers is not readily achievable, failing to make the goods, services, facilities, privileges, advantages, or accommodations of the Hilton OC available through alternative methods if such methods are readily achievable. On information and belief, as of the date of Plaintiff's most recent visit to the Hilton

OC and as of the filing of this Complaint, the subject premises have denied and continue to deny full and equal access to Plaintiff and to other similarly mobility disabled persons in other respects, which violate Plaintiff's rights to full and equal access and which discriminate against him on the basis of his disability, thus wrongfully denying him the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations, in violation of §§ 12182 and 12183 of the ADA. Ensuring safe entry and exit from the Hilton OC, along with genuinely accessible parking, designated paths of travel, loading zones, accessible counters, as well as an accessible swimming pool, whirlpool, and rooms, is a fundamental necessity. Without this ability, Plaintiff is unable to available himself of the goods and services offered at the Hilton OC on a full and equal basis. Therefore, the benefits of creating access, including, but not limited to, providing access to the pool/whirlpool, does not exceed the costs of readily achievable barrier removal. These costs are fundamental to doing business, like any other essential function of operating a public accommodation. It is thus readily achievable to remove these barriers. Furthermore, these are the types of barriers identified by the Department of Justice as presumably readily achievable to remove, and, in fact, these barriers are readily achievable to remove.

65.     Under the ADA, 42 U.S.C. 12188 *et seq.,* Plaintiff is entitled to the remedies and procedures set forth in § 204(a) of the Civil Rights Act of 1964, 42 U.S.C. 2000(a)-3(a), as he is being subjected to discrimination based on disability in violation of the ADA or has reasonable grounds for believing that he is about to be subjected to discrimination.

66.     Plaintiff seeks relief under remedies set forth in § 204(a) of the Civil Rights Act of 1964, 42 U.S.C. 2000(a)-3(a), and under Federal Regulations adopted.

WHEREFORE, Plaintiff requests relief as outlined below.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

### SECOND CLAIM:

### VIOLATION OF THE UNRUH CIVIL RIGHTS ACT

### [Cal. Civil Code §§ 51 et seq.]

67.     Plaintiff repleads and incorporates by reference, as if fully set forth again here, the allegations contained in all paragraphs of this Complaint and incorporates them here by reference as if separately repled hereafter.

68.     Hilton OC is a business establishment within the meaning of the Unruh Act.

69.     Defendants are the owners and/or operators of a business establishment.

70.     Defendants violated the Unruh Act by their acts and omissions:

- Failure to construct or alter the Hilton OC in compliance with state building code and state architectural requirements;
- Failure to remove known barriers to access at the Hilton OC;
- Failure to modify policies and procedures as necessary to ensure Plaintiff full and equal access to the accommodations, advantages, facilities, privileges, or services of the Hilton OC; and
- Violation of the ADA, a violation of which is a violation of the Unruh Act. Cal. Civil Code § 51(f).

71.     Plaintiff has experienced barriers to access at the Hilton OC, all of which have caused him major difficulty, discomfort, and embarrassment. Plaintiff suffered mental and emotional damages, including statutory and compensatory damages, according to proof.

72.     On information and belief, the Hilton OC is also illegally inaccessible in multiple other respects. As noted above, the barriers to access described in this Complaint are listed without prejudice to Plaintiff citing additional barriers to access after inspection by Plaintiff's access consultant(s)/expert(s).

73.     These barriers to access render the Hilton OC inaccessible to and unusable by persons with mobility disabilities. All facilities must be brought into

compliance with all applicable federal and state code requirements, according to proof. Plaintiff prays for leave to amend this Complaint, if necessary, to obtain full injunctive relief as to barriers that limit or deny full and equal access to persons with similar mobility disabilities.

74.     Each violation of the ADA constitutes a separate violation of California Civil Code § 51(f), thus independently justifying an award of damages and injunctive relief under California law, including, but not limited to, Civil Code § 52(a).

75.     As for Defendants' violations of the Unruh Act that are not predicated on violations of the ADA, Defendants' behavior was intentional: they were aware of or were made aware of their duties to remove barriers that prevent persons with mobility disabilities like Plaintiff from obtaining full and equal access to the Hilton OC. Defendants' discriminatory practices and policies that deny full enjoyment of Hilton OC to persons with physical disabilities reveal actual and implied malice and conscious disregard for the rights of Plaintiff and other similarly disabled individuals. Defendants have thus engaged in willful affirmative misconduct in violating the Unruh Act.

76.     On information and belief, the access features of the Hilton OC have not been improved since Plaintiff's visits there. Plaintiff's injuries are ongoing so long as Defendants do not modify their policies and procedures and provide fully accessible facilities for Plaintiff and other persons with similar mobility disabilities.

77.     At all times mentioned, Defendants knew, or in the exercise of reasonable diligence should have known, that his barriers, policies and practices at its facilities violated disabled access requirements and standards and had a discriminatory impact upon Plaintiff and upon other persons with similar mobility disabilities, but Defendants failed to rectify the violations, and presently continues a course of

1   conduct in maintaining barriers that discriminate against Plaintiff and similarly

2   situated disabled persons.

3          WHEREFORE, Plaintiff requests relief as outlined below.

4

5                              **THIRD CLAIM:**

6   **VIOLATION OF THE CALIFORNIA DISABLED PERSONS ACT**

7              **[Cal. Civil Code §§ 54 *et seq.*]**

8   78.    Plaintiff repleads and incorporates by reference, as if fully set forth

9   hereafter, the allegations contained in all paragraphs of this Complaint and

10  incorporates them herein as if separately repled.

11  79.    The Hilton OC is a place of public accommodation and/or places to which

12  the public is invited and, as such, they must comply with the provisions of the

13  California Disabled Persons Act ("CDPA"), California Civil Code  § 54 *et seq.*

14  80.    The CDPA guarantees, among other things, that persons with disabilities

15  have the same right as the public to the full and free use of the streets, highways,

16  sidewalks, walkways, public buildings, public facilities, and other public places.

17  California Civil Code § 54.

18  81.    The CDPA also guarantees, among other things, that persons with

19  disabilities have a right to full and equal access, as other members of the public, to

20  accommodations, advantages, facilities, and privileges of covered entities.

21  California Civil Code  § 54.1(a) (1).

22  82.    The CDPA also provides that a violation of the ADA is *a per se* violation of

23  CDPA, California Civil Code  § 54.1(d).

24  83.    Defendants have violated the CDPA by, among other things, denying and/or

25  interfering with Plaintiff right to full and equal access as other members of the

26  public to the accommodations, advantages, and its related facilities due to his

27  disability.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND
DAMAGES

WHEREFORE, Plaintiff requests relief as outlined below.

## **PRAYER FOR RELIEF:**

1.      Plaintiff has no adequate remedy at law to redress the wrongs suffered as explained in this Complaint. Plaintiff has suffered and will continue to suffer irreparable injury because of the unlawful acts, omissions, policies, and practices of Defendants as alleged here, unless Plaintiff is granted the relief he requests. Plaintiff and Defendants have an actual controversy and opposing legal positions as to Defendants' violations of the laws of the United States and the State of California. The need for relief is critical because the rights at issue are paramount under the laws of the United States and the State of California.

2.      Plaintiff requests a declaratory judgment that Defendants' actions, omissions, and failures—including but limited to: failing to remove known architectural barriers at the Hilton OC to make it "accessible to and useable by" mobility disabled persons; failing to construct and/or alter the Hilton OC in compliance with federal access standards, state building code, and state architectural requirements; and failing to make reasonable modifications in policy and practice for Plaintiff and other persons with similar mobility disabilities.

3.      Plaintiff requests that the Court issue an order enjoining Defendants, their agents, officials, employees, and all persons and entities acting in concert with them:[5]

        a.  From continuing the unlawful acts, conditions, and practices described in this Complaint;

        b.   To provide reasonable accommodation for persons with disabilities in all its programs, services, and activities at Hilton OC;

---

[5] Plaintiff does not seek injunctive relief under Cal. Civil Code section 55.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

c.  To ensure that persons with disabilities are not denied the benefits of, or participation in, programs, services, and activities at the Facilities;

d.  To modify the above-described facilities to provide full and equal access to persons with mobility disabilities, including, without limitation, the removal of all barriers to access where "readily achievable;"

e.  To maintain such accessible facilities once they are provided;

f.  To train Defendants' employees and agents in how to accommodate the rights and needs of physically disabled persons at the Facilities; and

g.  To implement nondiscriminatory protocols, policies, and practices for accommodating persons with mobility disabilities at the Facilities.

4.  Plaintiff requests that the Court retain jurisdiction over Defendants until the Court is satisfied that Defendants' unlawful policies, practices, acts and omissions, and maintenance of inaccessible public facilities as complained of here no longer occur, and cannot recur;

5.  Plaintiff requests all appropriate damages, including, but not limited to, statutory, compensatory, and treble damages in an amount within the jurisdiction of the Court, all according to proof;

6.  Plaintiff requests all reasonable statutory attorney fees, litigation expenses, and costs of this proceeding as provided by law, including, but not limited to, the ADA, 42 U.S.C. § 12205; the Unruh Act, California Civil Code § 52; and "public interest" attorney fees, litigation expenses and costs under California Code of Civil Procedure § 1021.5.

7.  Plaintiff requests prejudgment interest under California Civil Code § 3291;

8.  Plaintiff requests interest on monetary awards as permitted by law; and

9.  Plaintiff requests any other relief that this Court may deem just and proper.

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES

Date: July 31, 2024

REIN & CLEFTON
ALLACCESS LAW GROUP


___/s/ Irakli Karbelashvili___
By IRAKLI KARBELASHVILI, Esq.
Attorney for Plaintiff
JAMES ALGER


## JURY DEMAND

Plaintiff demands a trial by jury for all claims for which a jury is permitted.


Date: July 31, 2024

REIN & CLEFTON
ALLACCESS LAW GROUP


___/s/ Irakli Karbelashvili___
By IRAKLI KARBELASHVILI, Esq.
Attorney for Plaintiff
JAMES ALGER

COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND
DAMAGES
33